UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JANE HELMS, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | **Civil Action No.** |
| vs. | **JURY TRIAL DEMANDED** |
| WESTGATE RESORTS, INC.; WESTGATE RESORTS, LTD, WESTGATE MYRTLE BEACH, LLC; CENTRAL FLORIDA INVESTMENTS, INC; JOHN DOE CORPORATIONS 1-25 | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff, Jane Helms ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendants Westgate Resorts, Inc., Westgate Resorts, Ltd, Westgate Myrtle Beach, LLC, and Central Florida Investments, Inc. ("Defendants"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## SUMMARY OF ACTION

1. Plaintiff brings this Complaint on behalf of herself, and other similarly situated current or former employees of the Defendants at the Westgate Oceanfront Resort in Myrtle Beach, South Carolina.

2. This action is brought to remedy various violations of law in connection with Defendants' failure to pay commissions and other compensation to Plaintiff, a former sales employee of the Defendants, at the Westgate Oceanfront Resort.

3. More specifically, the Defendants further failed to pay the Plaintiff and other similarly situated commission-only sales employees the "reserve funds" that were accumulated from past earned commissions upon said employee's resignation or termination of employment with the Defendants.

4. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a subclass of all similarly situated salespersons employed by the Defendants who sustained damages from Defendants' breach of its contracts with its salespersons and acts of conversion within the applicable statute of limitations until entry of judgment after trial.

5. The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed itself to this District's jurisdiction and authority, given that the Defendants do business in the State of South Carolina and employed the Plaintiff in the State of South Carolina.

8. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendants employed the Plaintiff at Defendants' place of business within this District.

## PARTIES

9. Plaintiff Jane Helms is a citizen of Myrtle Beach, Horry County, South Carolina.

10. Defendant Westgate Resorts, Inc. is a corporation organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's corporate headquarters are located at 5601 Windhover Drive, Orlando, Florida 32819.

11. Defendant Westgate Resorts, LTD, is a Limited Partnership organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's corporate headquarters are located at 5601 Windhover Drive, Orlando, Florida 32819.

12. Defendant Westgate Myrtle Beach, LLC is a Limited Liability Company organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's corporate headquarters are located at 5601 Windhover Drive, Orlando, Florida 32819.

13. Defendant Central Florida Investments, Inc. is a corporation organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's corporate headquarters are located at 5601 Windhover Drive, Orlando, Florida 32819.

14. The Defendants "John Doe" entities 1 to 25 are named fictitiously and their exact legal names and the number of such Defendants are unknown (the "John Doe Defendants"). Such Defendants are legal entities that are part of the Westgate Timeshare Business Enterprise (the

"WTBE") that is described herein and are alleged to be liable to the Plaintiff in the same fashion as the identified Defendants, and such John Doe Defendants shall be precisely identified and named in this case at a later date when sufficient information as to the same becomes available to the Plaintiff.

15. The identified Defendants are part of the WTBE and are corporations or other business entities that are formed pursuant to laws of the State of Florida and are currently conducting business in the State of South Carolina.

16. The WTBE consists of all of the Defendants, such business being engaged in the sale, creation, development and management of timeshare properties throughout the United Sates, including in Nevada, Arizona, Florida, Missouri, Mississippi, South Carolina, Tennessee, Utah and Virginia.

17. Plaintiff was employed as a salesperson in the WTBE's Myrtle Beach, South Carolina time share sales business during the two years immediately preceding the filing of this lawsuit.

18. Upon information and belief, the WTBE employed hundreds or thousands of such inside salespersons within the United States on a commission-only basis within the last three years.

**FACTUAL ALLEGATIONS**

19. Plaintiff was employed by the Defendants at the Westgate Oceanfront Resort in Myrtle Beach, South Carolina as a commission-only salesperson of timeshare properties.

20. The Defendants employ salespersons such as the Plaintiff who either work on Defendant's premises selling time share (fractional real estate) interests or getting prospective customers to take tours (participate in sales presentations) of time share properties, all such salespersons being paid solely on a commission basis.

4

21. The Defendants pay its sales force on a commission-only basis. The amount of their pay does not depend on the number of hours they worked in a given workweek, but upon the number of timeshare sales they make or customers they persuade to take timeshare tours.

22. Plaintiff, as a condition of her employment with the Defendants, had to maintain certain "reserve funds" with the Defendants, such reserve funds being accumulated from the commissions that the Plaintiff was owed by the Defendants. Upon information and belief, such "reserve funds" were typically three to four thousand dollars in amount.

23. The purpose stated by the Defendants for such "reserve funds" was the reimbursement to the Defendants of commissions paid to the Plaintiff in the event that one of Plaintiff's sales was rescinded by the customer in the statutorily defined recission period per state law.

24. The reserve funds were, unless charged back against by the Defendants, fully the property of the Plaintiff and other similarly situated employees, and were acknowledged by the Defendants to be the Plaintiff's property except to the extent that any "charge backs" were applied against the reserve funds.

25. Upon termination of the Plaintiff and other similarly situated employees' employment with the Defendants, and the passing of any time period under which the Defendants were entitled to make a "charge back" against the Plaintiff's reserve funds, the Defendants were obligated to release the remaining monies in such reserve funds to their respective funds to their respective employees, such monies being the vested property of the employees.

26. Despite said duty to release any remaining "reserve funds" at the termination or conclusion of employees' employment with the Defendants, Defendants refused to release said "reserve funds" to the Plaintiff at the conclusion of her employment. In fact, Defendants somehow

claimed that the Plaintiff actually owed the Defendants money for "charge backs" that were paid up and above the reserve funds.

27.     Upon information and belief, Defendants have made a pattern and practice of wrongfully retaining and converting employees' reserve funds and have consistently refused to release said funds to employees, often stating that the reserve funds are depleted or that the terminated employee actually owes money back to the Defendants.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff bring this action on behalf of herself and as a class action for all others similarily situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class (the "Class"):**
> All salespersons who worked as commission-only salespersons for the Defendants within the applicable statute of limitations who had "reserve funds" held by the Defendants that were wrongfully withheld by the Defendants upon the conclusion of said salesperson's employment with the Defendants.
>
> **South Carolina State Subclass (the "South Carolina Sub-class"):**
> All individuals within the State of South Carolina who worked as commission-only salespersons for the Defendants within the applicable statute of limitations who had "reserve funds" held by the Defendants that were wrongfully withheld by the Defendants upon the conclusion of said salesperson's employment with the Defendants.

29.     Excluded from the Class and Sub-classes are Defendants, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

30.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Sub-classes before the Court determines whether certification is appropriate.

31.     The particular members of the (i) Nationwide Class and ii) South Carolina sub-

class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from public records.

32.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33.  The proposed Classes are so numerous that the joinder of all members is impracticable.

34.  This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

35.  Upon information and belief, the Classes are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

36.  Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class, because, inter alia, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Sub-class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members

of the Class and their respective Sub-class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

37. Plaintiff will fairly and adequately protect the interest of the members of the Class and Sub-class. Plaintiff and the members of the Class and Subclass were all commission-only salespersons of the Defendants whose "reserve funds" were wrongfully withheld by the Defendants upon the conclusion of their employment with the Defendants. Plaintiff will fairly and adequately represent and protect the interest of the Class and Sub-class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interest antagonistic to those of the Class or Sub-class, and Defendants have no defenses unique to Plaintiff.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

38. A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class and Sub-class members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized

litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

39. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Sub-class, and other equitable relief on grounds generally applicable to the entire Class and the Sub-class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class and the Sub-class are certified, Defendants will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Sub-class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class and Sub-class may continue to be unfairly treated.

40. Defendants have acted and refused to act on grounds generally applicable to the Class and the Sub-class, making final injunctive relief appropriate with respect to the Class as a whole.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

41. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendants' wrongful retention of Plaintiff and Class Members' "reserve funds" was an act of conversion;

   b. Whether Defendants breached its contract with the Plaintiff by failing to release Plaintiff's "reserve funds" upon the termination of Plaintiff's employment;

   c. Whether Defendants' retention of Plaintiff and Class Members' "reserve funds" was a violation of Defendants duty of good faith and fair dealing;

    d.    Whether Defendants were unjustly enriched as a result of retaining and refusing to release Plaintiff and Class Members' "reserve funds" upon the termination of Plaintiff's employment with the Defendants;

    e.    The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    f.    Whether Plaintiff and the Class and Sub-class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
**(On behalf of Plaintiff and the Class)**

42.    Plaintiff repeats and realleges each and every allegation mentioned in Paragraphs 1-41 as if fully set forth herein. Plaintiff brings this count on behalf of herself and members of the Class against Defendants.

43.    Pursuant to a written contract or series of written contracts, the Defendants promised to pay the Plaintiff and members of the Class certain commissions in exchange for their work as salespersons for the Defendants.

44.    Plaintiff and each member of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms of said contracts.

45.    The Defendants breached the aforesaid contracts in that pursuant to such contracts the Plaintiff and the members of the class should have received certain commissions, held in reserve by the Defendants, which the Defendants failed to pay the Plaintiff and Class Members.

46.    As a result of Defendants' breach of contract, Plaintiff and the members of the Class have been damaged in an amount to be proved at trial and seeks relief as a set forth in the Prayer below.

**COUNT II**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and the Class)**

47. Plaintiff repeats and realleges Paragraphs 1-41 as if fully set forth herein.

48. Plaintiff brings this count on behalf of herself and the Classes against Defendants.

49. Plaintiff and each Class Member entered into written contract or series of written contracts with the Defendants whereby the Defendants promised to pay the Plaintiff and members of the class certain commissions in exchange for their work as salespersons for the Defendants

50. A covenant of good faith and fair dealing is implied in Plaintiff's and members of the Class's contracts with Defendants. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitutes examples of bad faith in the performance of the contracts.

51. The material terms of the Defendants' contracts with the Plaintiff and Class Members therefore included the implied covenant of good faith and fair dealing, whereby Defendants covenanted that it would, in good faith and in exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure the rights and benefits under the contract of Plaintiff and the members of the Class.

52. Plaintiff and the members of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendants' misconduct.

53. As alleged herein, Defendants breached the implied covenant of good faith and fair dealing by retaining and refusing to pay to Plaintiff and Class Members commissions held in reserve upon the conclusion or termination of Plaintiff and Class Members' employment with the Defendants.

54. Defendants' actions impede the right of Plaintiff and the members of the Class from receiving benefits that they reasonably expected to receive under the contracts.

55. Upon information and belief, Defendants' actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to increase Defendants' revenue at the expense of their employees, which completely evades Plaintiff and the members of the Class's reasonable expectations.

56. Plaintiff and the members of the Class have sustained damages as a result of the Defendants' conduct as alleged herein.

57. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the members of the Class have been damaged in an amount to be proved at trial and seek relief as set forth in the Prayer below.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

58. Plaintiff incorporates paragraphs 1-41 as if fully set forth herein.

59. Plaintiff brings this count on behalf of herself and the Classes against Defendants.

60. Plaintiff and members of the Class were commission-only sales employees of the Defendants who had commissions withheld or reserved by the Defendants during their employment. They reasonably believed that Defendants would release these commission reserve funds to the Plaintiff and members of the Class upon the conclusion of their employment with the Defendants. Plaintiff and the Class suffered financial losses when the Defendants refused to release the reserved commissions upon the conclusion of their employment with the Defendants.

61. By refusing to release reserved commissions upon the conclusion of Plaintiff and Class Members' employment, Defendants unjustly enriched themselves by taking a benefit without providing any additional service or value to Plaintiff and members of the Class. Defendants have accepted and retained these benefits even though Defendants failed to provide any further value to the Plaintiff and Class Members, thereby making Defendant's retention unjust.

62. By its wrongful acts and omissions described herein, Defendants were unjustly enriched at the expense of Plaintiff and the members of the Class.

63. Plaintiff and the Class's detriment, and Defendants' enrichment, were related and flowed from the wrongful conduct alleged in this Complaint.

64. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the Class Members. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

65. Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendants' unjust enrichment.

66. Plaintiff and the members of the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

67. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for its inequitable and unlawful conduct.

**COUNT IV**
**CONVERSION**
**(On Behalf of Plaintiff and Class)**

68. Plaintiff incorporates Paragraphs 1-41 as if fully set forth herein.

69. Plaintiff and Class Members, as a condition of their employment with the Defendants, had to maintain certain "reserve funds" with the Defendants, such reserve funds being accumulated from the commissions that the Plaintiff was owed by the Defendants. Upon information and belief, such "reserve funds" were typically three to four thousand dollars in amount.

70. The purpose stated by the Defendants for such "reserve funds" was the reimbursement to the Defendants of commissions paid to the Plaintiff and Class Members in the event that one of Plaintiff and/or Class Members' sales was rescinded by the customer in the statutorily defined recission period per state law.

71. The reserve funds were, unless charged back against by the Defendants, fully the property of the Plaintiff and Class Members, and were acknowledged by the Defendants to be the Plaintiff and Class Members' property except to the extent that any "charge backs" were applied against the reserve funds.

72. Upon termination of the Plaintiff and other Class Members' employment with the Defendants, and the passing of any time period under which the Defendants were entitled to make a "charge back" against the Plaintiff and Class Members' reserve funds, the Defendants were

obligated to release the remaining monies in such reserve funds to their respective funds to their respective employees, such monies being the vested property of the employees.

73. The Defendants' relationship to the reserve funds was that of a bailee or custodian lacking any legal right to the reserve funds beyond its aforesaid limited in time "charge back" rights.

74. Despite having a duty to deliver the reserve funds to the Plaintiff and Class Members upon the expiration of its "charge back" rights the Defendants converted such reserve funds and refused to deliver said funds to the Plaintiff and Class Members.

75. Plaintiff and the members of the Class have sustained damages as a result of the Defendants' conduct as alleged herein.

76. As a result of Defendants' conversion, Plaintiff and the members of the Class have been damaged in an amount to be proved at trial and seek relief as set forth in the Prayer below.

**COUNT V- VIOLATIONS OF SOUTH CAROLINA PAYMENT OF WAGES ACT
S.C. CODE ANNOTATED § 41-10-10 et seq.**

77. As an employer of more than five (5) employees in the State of South Carolina, Defendants are subject to the requirements of the South Carolina Payment of Wages Act (S.C. Code Ann. § 41-10-10 et seq.).

78. Pursuant to § 41-10-40 of the South Carolina Payment of Wages Act, an employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification of the amount and terms of the deductions.

79. Pursuant to § 41-10-50 of the South Carolina Payment of Wages Act, when an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight (48) hours of the separation or the next regular payday

which may not exceed thirty (30) days.

80. Defendants violated § 41-10-40 of the South Carolina Payment of Wages Act by unlawfully withholding and depleting the wages held in Plaintiff's "reserve fund" without permission to do so by state or federal law and without giving the Plaintiff written notification of the amount and terms of the deductions.

81. By failing to release the Plaintiff's "reserve funds" upon the conclusion of Plaintiff's employment with the Defendanats, Defendants failed to pay all wages due to the Plaintiff upon her separation from the payroll in violation of § 41-10-50 of the South Carolina Payment of Wages Act.

82. As a result of the aforesaid violations of the Act, Plaintiff has suffered damages equal to the amount of the "reserve funds" unlawfully withheld by the Defendants, as well as treble damages and attorney's fees pursuant to § 41-10-80 of the South Carolina Payment of Wages Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class and Sub-class Members;

B. Naming Plaintiff as the representative of the Class and the South Carolina Sub-Class;

C. Declaring that Defendant's conduct violated the laws referenced herein;

D. Finding in favor of Plaintiff and the Class and Sub-classes on all counts asserted

herein;

E. Awarding actual, consequential, punitive, statutory, and treble damages;

F. For injunctive relief as pleaded or as the Court may deem proper;

G. For disgorgement and restitution to Plaintiff and the Class and/or Sub-class members of all monies received or collected from Plaintiff and the Class and/or Sub-class members and all other forms of equitable relief;

H. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

I. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: July 25, 2024            Respectfully submitted,

/s/ *Paul J. Doolittle*
**POULIN | WILLEY | ANASTOPOULO**
Paul J. Doolittle (*Fed ID: 6012*)
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
          cmad@poulinwilley.com

*Attorneys for Plaintiffs*