**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| JANE HELMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WESTGATE RESORTS, INC.; WESTGATE RESORTS, LTD, WESTGATE MYRTLE BEACH, LLC; CENTRAL FLORIDA INVESTMENTS, INC; JOHN DOE CORPORATIONS 1-25<br><br>*Defendant*. | **Civil Action No. 4:24-cv-4154**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Jane Helms ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Second Amended Class Action Complaint against Defendants Westgate Resorts, Inc., Westgate Resorts, Ltd, Westgate Myrtle Beach, LLC, and Central Florida Investments, Inc. ("Defendants"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

**SUMMARY OF ACTION**

1. Plaintiff brings this Second Amended Complaint on behalf of herself and on behalf of all others similarly situated. Specifically, Plaintiff was employed Defendants. Plaintiff was employed at the Westgate Oceanfront Resort in Myrtle Beach, South Carolina.

2. This action is brought to remedy the Defendants' actions and omissions in their failure to pay Plaintiff, and other similarly situated current or former employees, their lawfully owed compensations.

3. More specifically, Defendants failed to pay Plaintiff, and other similarly situated commission-based sales employees, appropriate commissions under the terms of the relevant employment agreement(s) between Defendants and said employees (Dkt. Nos. 12-1, 12-2). Although Plaintiff and Defendants entered into an agreement with one another, it is believed that said Agreement and schemes therein applied to all similarly situated employees of Defendants. In the alternative, to the extent that a valid contract does not exist, Defendants were unjustly enriched by the acts and services of Plaintiff and those similarly situated. In addition, Plaintiff and the Class are entitled to restitution.

4. In any event, Plaintiff, and other similarly situated employees, were deprived of their benefit of the bargain regarding their employment, pay, and services provided.

5. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a class of all similarly situated salespersons employed by Defendants during the statutory period who were not dispersed funds that were lawfully owed to Plaintiff and the proposed Class.

6. The allegations herein are based on personal knowledge as to Plaintiff's own experiences, contracts (that may or may not be valid contracts) between Defendants and Plaintiff, investigation by counsel, and publicly available information.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of costs and interest.

8. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves to this District's jurisdiction and authority, given that the Defendants have sufficient minimum contacts with the District, do business in the state of South Carolina, and employed Plaintiff in the State of South Carolina.

9. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

10. Plaintiff is a citizen of Myrtle Beach, South Carolina. Myrtle Beach is located within Horry County. Plaintiff was employed by Defendants from March of 2022 until April of 2024.

11. Defendant Westgate Resorts, Inc. is a corporation organized and in existence under the laws of the State of Florida and registered to do business in South Carolina. Defendant's principal place of business is located at 5601 Windhover Drive, Orlando, FL 32819.

12. Defendant Westgate Resorts, Ltd. is a limited partnership organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's principal place of business is located at a 5601 Windhover Drive, Orlando, FL 32819.

13. Defendant Westgate Myrtle Beach, LLC is a limited liability company organized and in existence under the laws of the State of Florida and registered to do business in the State of South Carolina. Defendant's principal place of business is located at 5601 Windhover Drive, Orlando, FL 32819.

14. Defendant Central Florida Investments, Inc. is a corporation organized and in existence under the laws of the State of Florida and Registered to do business in the State of South

Carolina. Defendant's principal place of business is located at 5601 Windhover Drive, Orlando, FL 32819.

15. The Defendants "John Doe" entities 1 to 25 are named fictitiously and their exact legal names and the number of such Defendants is unknown. Such "John Doe" Defendants are legal entities that are part of the Westgate Timeshare Business Enterprise (the "WTBE") that is described herein and are alleged to be liable to Plaintiff in the same fashion as the identified Defendants. As such, John Doe Defendants shall be precisely identified and named in this case at a later date when sufficient information as to the same becomes available to Plaintiff.

16. The identified Defendants are part of the WTBE and are corporations or other business entities that are formed pursuant to the laws of the State of Florida and are currently conducting business in the State of South Carolina.

17. The WTBE consists of all of the Defendants, such business being engaged in the sale, created, development, and management of timeshare properties throughout the United States, including in Nevada, Arizona, Florida, Missouri, Mississippi, South Carolina, Tennessee, Utah, and Virginia.

18. Upon information and belief, the WTBE employed hundreds, if not thousands, of such timeshare salespersons within the United States on a commission-only basis within the last three years. Such salespersons, upon information and belief, have experienced the same sort of treatment that Plaintiff experienced, in that their lawfully owed compensations were withheld by Defendants.

## FACTUAL ALLEGATIONS

*Timeshares Generally*

19. Plaintiff was employed by Defendants at the Westgate Oceanfront Resort in Myrtle Beach, South Carolina. In her employment, Plaintiff was a salesperson who sold timeshare properties and provided tours to prospective timeshare buyers ("Customers").

20. Timeshare properties are properties that are individual properties that are owned by multiple individuals with each respective individual owner having an exclusive use of the property for a set period of time, usually a specific week or weeks within a year.[1]

21. In 2022, there were 252,470 timeshare units in the United States. The timeshare industry generated $10.5 billion in revenue from 1,541 U.S. located resorts.[2]

22. Timeshares are noted for their disadvantages, with one of the notable "cons" of timeshares being "Aggressive marketing practices".[3]

23. The Defendants employ salespersons, such as the Plaintiff, who either work on Defendant's premises selling time share (fractional real estate) interests or getting prospective customers to take tours (participate in sales presentations) of time share properties.

24. Timeshares are often sold fractionally, with the buyer financing through the selling resort or developer.[4]

25. In fact, it is reported that "However, timeshare loans from the property or developer often have very high interest rates."[5]

26. In more detail, it is reported that: "Timeshare salespeople know you likely don't have the cash on hand for a five-figure purchase. And they don't want you reconsidering your

---

[1] https://www.investopedia.com/terms/t/timeshare.asp (Last accessed June 30, 2025).
[2] *Id.*
[3] *Id.*
[4] https://www.universalclass.com/articles/business/timeshare-financial-considerations.htm#:~:text=1.,or%20operator%20of%20the%20timeshare. (Last accessed June 30, 2025).
[5] https://www.bankrate.com/loans/personal-loans/timeshare-loans-primer/#what (Last accessed June 30, 2025).

"yes" while navigating personal loan applications after your vacation ends. On-the-spot financing lets both you and the salesperson seal the deal fast."[6]

27. And further, it is also reported that: "Since timeshares don't grow in value and are hard to resell, owners often simply walk away and default on their loans."[7]

28. Defendants, upon information and belief, finances their time shares in-house, in that the purchasers of the timeshares end up paying Defendants directly.

29. Upon information, belief, and investigation, it is believed that Defendants operate multiple timeshare resorts throughout the United States, employing hundreds, if not thousands, of salespersons like Plaintiff. The salespersons, like Plaintiff, work to sell timeshares with in-house financing.

*Defendant's Compensation Schemes and Rules Therein*

30. As illustrated by Defendants' filed employment agreement, Defendants pays its salespersons by performance-based incentives ("commissions") distributed through what Defendants calls a "daily draw" from what is called a "reserve fund". This daily draw is best described as a daily distribution of already earned, at least partially earned, funds as Defendants say that daily draw funds are not fully earned until certain conditions are met.[8]

31. Defendants state that commissions are not fully earned until certain conditions are met. Such modification and payment of such funds is still left up to Defendants' "sole discretion"

---

[6] https://www.bankrate.com/loans/personal-loans/timeshare-loans-primer/#pros (Last accessed June 30, 2025).

[7] https://www.bankrate.com/loans/personal-loans/timeshare-loans-primer/#pros (Last accessed June 30, 2025).

[8] Docket Entry 12-1 ; 12-2

as included in Section V of Docket Entry 12-2.[9] To the extent that a contract is left up to one party's sole discretion and desire to perform, such a contract or term therein is illusory under Florida law.[10]

32. Defendants do provide that they will not pay its employees any less than required by federal law, though.[11]

33. The Agreement also states that the laws of the State of Florida shall apply, and this Honorable Court has ordered such. Thus, Florida law shall apply and Plaintiff brings causes of action under such laws of the state of Florida.[12]

34. Under Florida law, the economic loss rule only applies to products liability matters. See *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013).[13] Thus, Plaintiff can bring causes of action under tort and equitable doctrines in addition to causes of action under contract law pursuant to Florida law. Plaintiff pleads such equitable causes of action in the alternative to those in which Plaintiff purports the existence of a valid contract.

35. The daily draw, although being subject to the sole discretion of Defendants, is also stated by Defendants to be based upon the number of days employee provides services and includes payment for all sales efforts, output, and production for each work week.[14] Given this statement by Defendants, Plaintiff and those similarly situated salespersons reasonably believed that their

---

[9] Docket Entry 12-1 ; 12-2

[10] "It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract. *Howard Cole & Co. v. Williams*, 157 Fla. 851, 27 So.2d 352 (1946). Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound. *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 (D. Fla. 1923), affirmed, 296 F. 693 (5th Cir. 1924)." *Young v. Johnston*, 475 So. 2d 1309, 1313, 1985 Fla. App. LEXIS 16151, *11, 10 Fla. L. Weekly 2243

[11] Docket Entry 12-1 ; 12-2

[12] Docket Entry 37

[13] "Based on the foregoing, we answer the rephrased certified question in the negative and hold that the application of the economic loss rule is limited to products liability cases." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407, 2013 Fla. LEXIS 343, *23, 38 Fla. L. Weekly S 151, 2013 WL 828003

[14] Docket Entry 12-1 ; 12-2

performance would dictate their salaries. Plaintiff and those similarly situated salespersons would not have worked to the extent worked had they known that there was no true guarantee of payment based upon performance and work done.

36. Defendants, based upon the employment agreement provided, do not pay its salespersons any set salary or any directly analogous pay in which salespersons are concretely compensated respective of their hours worked or directly paid for sales made. Rather, Defendants arbitrarily pay its employees as Defendants see fit but, at the same time, stating that payment is based upon the number of timeshare sales made, or the number of customers that the salesperson convinces into taking a timeshare tour. But, to be clear, Defendants also maintains that it has "sole discretion" regarding daily draw distributions and only guarantees that its salespersons get the bare minimum wage, despite said salespersons' already (at least partially, but not "fully") earned commissions that then go into the reserve fund.[15] Given the inconsistent nature of Defendants relationship with Plaintiff and similarly situated salespersons, Plaintiff pleads causes of action in alternative to one another.

37. In addition to being performance based, yet also undefined, Defendants' payment of its employees is not direct either, nor are such commissions paid at time of sale. Pursuant to the Employment Agreement between Plaintiff and Defendants, the commissions earned on timeshare sales are placed into what is described as a "reserve fund".[16]

38. In short, the Reserve Fund operates similar to an escrow account, in which Defendants keep ahold of the salespersons' already (at least partially) earned commissions and

---

[15] Docket Entry 12-1 ; 12-2
[16] *Id.*

compensations, until certain conditions, to be performed by parties who are not party to the Employment Agreement, are met.

39. The commissions (despite having already been at least partially earned based upon the initial sale of a timeshare, or a tour of a timeshare, itself) are essentially not payable unless the purchaser, the customer buying the timeshare, makes six consecutive, timely monthly payments.[17]

40. In sum, Plaintiff and those similarly situated, seem to get no commissions paid unless the initial sale is followed up with a customer's half a year's worth of payments on the already sold timeshare that is now, upon information and belief, likely financed by Defendants.[18] Upon information and belief and investigation, such financing determinations regarding a customer's eligibility for financing, are decisions made by Defendants, or are at least not made by Plaintiff or similarly situated salespersons. In practice, Defendants employs persons such as Plaintiff to sell fractional pieces of real estate and Defendants then approve the in-house financing of such sales, and despite Defendants' own decision-making regarding financing, once a Customer defaults, Defendants then withhold Plaintiff and other salespersons' earned, at least partially, commissions.

41. Upon information, belief, and the review of Defendants' pay schedule, there is no bonus, nor any additional compensation given to salespersons due to these required timely payments made by customers.

42. Seemingly, this six-month payment waiting period operates as no more than a holding period in which Defendants gets to hold onto already, at least partially, earned commission

[17] Docket Entry 12-1 ; 12-2.
[18] See: https://www.westgateresorts.com/news/westgate-resorts-completes-145000000-securitization-of-timeshare-loans/ ; See also: https://www.westgateresorts.com/news/westgate-resorts-completes-206000000-securitization-of-timeshare-loans/ (last accessed July 7, 2025)

funds and then keep the commission funds permanently in the event of default on part of the purchaser whose sale is possibly financed by Defendant.

43. In addition to withholding the already earned commission funds, the relevant contracts and agreements contain no mention of any interest earning or interest payments on such funds that have been siloed by Defendants that may be eventually paid to Plaintiff and other salespersons. In practice, a lack of an interesting earning account results in a diminution of commissions as such commissions are subject to a mandatory minimum of six months of inflation and the reductions therein. The inflation rates within the United States were 6.5% for 2022, 3.4% for 2023, and 2.9% for 2024.[19] Thus, Plaintiff and similarly situated salespersons lose a considerable percentage of their earned incomes as such incomes and compensations are decreased due to inflation.

44. Not only does the Reserve Fund fail to earn interest in its holding period, but the reserve fund is also subject to reduction in the context of an employee leaving Defendant. In fact, Defendants states that it will charge back commissions from the reserve fund unless the purchaser has made six timely and consecutive payments and the minimum down payment has been made.[20]

45. In the event that this contract is not illusory, after the above conditions, the six-month payment period and the down payment, are met, Defendants are obligated to release the remaining monies in the reserve funds to its salespersons, such as Plaintiff.

46. Despite this obligation and possible contractual duty to release reserve funds, which is no more than paying its employees their already (at least partially, if not fully) owed funds, Defendants has not paid Plaintiff the reserve funds as owed.

[19] https://www.usinflationcalculator.com/inflation/current-inflation-rates/#google_vignette (last accessed July 7, 2025)
[20] Docket Entry 12-1 ; 12-2

47. Upon information and belief, Defendants have often asserted, without providing any documentation in many cases (upon information and belief), that additional chargebacks exceeded the reserve balance, resulting in a net liability to Defendants in which a salesperson owes Defendants money. This above "net liability", to the extent that such exists, is nonsensical. Upon information and belief, the only funds that go into the reserve funds are what Plaintiff has already (at least partially) made through sales and tours. Thus, any "charge backs" because of a failed 6-month waiting period would amount to a net zero as there are only as many possible charge-backs as there are sales made or other work done by Plaintiff and similarly situated employees unless Defendants are charging back additional items to funds.

48. Upon information and belief, Defendants have made a pattern and practice of withholding employees' lawfully owed reserve funds and have consistently refused to release said funds, essentially refusing to pay its employees, often stating that the reserve funds are depleted or that the terminated employee owes money back to Defendants. Upon information and belief, such claims are often unsupported in that there is often no explanation or itemized accounting provided.

49. In any event, it is nonsensical that Defendants would, or even could, reasonably state that an employee would owe money back to Defendants as the only reserve funds that were put into the reserve funds were those earned by Plaintiff. If Plaintiff, or any other salesperson had every single (at least partially earned) commission charged back to their reserve fund, the net result would be zero.

50. Upon information, belief, and investigation by counsel, Defendants have a pattern and practice of withholding employees' payments through reserve fund chargebacks withhold any accounting or explanation.

51. Plaintiff, following the end of her employment, had all funds contained within her reserve fund withheld.

52. Given that Plaintiff was paid on the six-month waiting period for properties sold six months prior to payment of said commissions, Plaintiff has been withheld up to six months' worth of compensations.

53. If this Honorable Court finds that a valid contract exists, Plaintiff maintains that Defendants breached said contract through its actions and omissions and failures to pay Plaintiff.

54. In the event that this Honorable Court does not find that a valid contract between Plaintiff and Defendants exists, or that terms are stricken, particularly Defendant's terms stating that it is entitled to sole discretion of wages and commissions and Defendant's terms stating that a third party (a buyer) must complete additional terms out of Plaintiff's control and with no additional consideration paid to Plaintiff, Plaintiff maintains that Defendants has been unjustly unenriched and/or that Plaintiff is entitled to restitution.

55. Upon information, belief, and investigation, along with provided contracts, Defendants have or should have accounting of salesperson performance, salesperson outputs, commissions, sales, and payments to or done by Plaintiff and similarly situated salespersons, or the withholding of such. Secondly, Defendants have or should have records related to financing and customers payments and defaults related to financing of timeshare sales.

56. Under Florida law, a Plaintiff may bring both breach of contract and quantum meruit claims in the same complaint. *Banks v. Steinhardt*, 427 So. 2d 1054, 1056 (Fla. 4th DCA 1983). Under Florida law, a Plaintiff may bring both breach of contract and unjust enrichment claims in the same complaint so long as the pleadings are brought in the alternative of one another.

*Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019).

**CLASS ACTION ALLEGATIONS**

57. Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed classes ("Class" or "Classes") are defined as:

> **Nationwide Class:** All individuals within the United States who worked as salespersons for the Defendants within the applicable statute of limitations who had their commissions, or otherwise performance-based compensations, unlawfully withheld by Defendants.
>
> **South Carolina Class:** All individuals within South Carolina who worked as salespersons for the Defendants within the applicable statute of limitations who had their commissions, or otherwise performance-based compensations, unlawfully withheld by Defendants.

58. Excluded from the Class are Defendants, its parents, subsidiaries, affiliates, officers, directors, judicial officers, immediate family members, and associated court staff assigned to this case.

59. Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

60. The particular members of the classes are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates, agents, or from public records. The particular damages to each Class Members are readily ascertainable as such damages were noted and maintained by Defendants as such performance-based incentives were accounted by Defendants as such were placed into the aforementioned reserve fund for purposes of eventual payment.

61. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

62. The proposed Classes are so numerous that joinder of all members is impracticable.

63. This Action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

64. Upon information and belief, the Classes are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

65. Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members were subject to the policies and procedures, and their claims arise from the same standardized contractual language, and in the alternative to a valid contract existing, Defendants' same standardized conduct depriving Plaintiff and the Class of their lawfully owed wages, commissions, or other compensations.

66. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all Class Members.

67. In addition, Plaintiff is entitled to relief under the same causes of action and upon

the same facts as the other members of the proposed Class.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

68. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff and Class Members were commission-based employees who had their (at least partially) earned commissions or other compensations withheld by Defendants.

69. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest(s) to the Class and Defendants have no defenses unique to Plaintiff.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

70. A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and the Class. Questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her.

71. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would also increase the delay and expenses to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

72. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described.

73. Unless a Class is certified, Defendants will continue to benefit from the uniform application of its payment schemes, while Plaintiff and other similarly situated salespersons may be unable to obtain relief for the alleged failure to release vested commission payments. Class-wide injunctive relief is necessary to ensure consistent and fair treatment of the legal claims arising from these practices.

74. Defendants have acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

75. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants failed to pay the Class their lawfully owed commissions and/or other owed compensations;

b. Whether Defendants breached its contract with Plaintiff by failing to release Plaintiff's vested commissions stored in the "reserve fund" upon the termination of Plaintiff's employment;

c. Whether Defendants actions and omissions violated the duty of good faith and fair dealing;

d. Whether, in the event of no valid contract existing, Defendants was unjustly enriched due to Plaintiff and the Class's services;

e. Whether, in the event of a contract or terms therein partially existing, Plaintiff and the Class are entitled to reimbursement due to services performed under equitable doctrines;

f. The appropriate measure of damages or statutory relief;

g. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of relief.

## CAUSES OF ACTION
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

### COUNT I
### BREACH OF CONTRACT

76. Plaintiff brings this cause of action in the event that a valid contract between Defendants and Plaintiff existed.

77. Plaintiff and Defendants entered into a written contract.

78. This contract governed the terms of compensation for Plaintiff and similarly situated salespersons.

79. Plaintiff fulfilled all necessary requirements, conditions, covenants, and promises required by the contract.

80. Defendants breached the contracts in that they refused to pay Plaintiff their lawfully owed commissions and compensations, such output and performance-based compensations were the crux of Plaintiff's contract with Defendants. Such a lack of payment constitutes a material breach as the payments for performance-based output was essential to the Contract and Plaintiff reasonably expected to be compensated for performance-based incentives that were satisfied.

81. As a result of Defendants' breach of contract, Plaintiff and the members of the Class have been damaged in an amount to be proved at trial and seeks relief as set forth in the Prayer below.

**COUNT II**
**CONVERSION**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

82. Plaintiff incorporates paragraphs 1-75 as if fully set forth herein.

83. Under Florida law, the economic loss rule only applies to products liability matters. See *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013). This matter is not a products liability matter.

84. Plaintiff, as a result of the contract being fulfilled and all conditions being met, had a right to possess earned commissions.

85. Defendants took and possessed Plaintiff's lawful commissions and earnings through its retention of funds.

86. The Defendant's relationship to the reserve funds was that of a bailee or custodian lacking any legal right to commissions or funds beyond the limited time in subject to reductions.

87. Despite having a duty to deliver the commissions and funds to the Plaintiff and Class Members, Defendants maintained ownership of the funds.

88. Plaintiff was deprived of the property and uses therein.

89. As a result of Defendant's conversion of Plaintiff and the Class have suffered damages.

**COUNT III**
**NEGLIGENCE**

90. Plaintiff incorporates paragraphs 1-75 as if fully set forth herein.

91. Under Florida law, the economic loss rule only applies to products liability matters. See *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013). Plaintiff is not alleging that any products caused any harm.

92. Defendants owed a duty to Plaintiff and the Class to properly maintain and distribute Plaintiff and the Class's earned commissions.

93. Defendants breached this duty by failing to properly maintain and distribute the earned commissions. Defendants' actions and omissions led to the depletion of Plaintiff and the Class's earned funds and/or the outright denial of paying of funds to Plaintiff and the Class.

94. This duty to properly maintain and distribute Plaintiff and the Class's compensations is and was foreseeable as Defendants themselves assigned themselves as custodians of said monies and commission funds.

95. This breach caused damages to Plaintiff and the Class as they were deprived of earned funds and such earned funds were diminished in value by Defendants' withholding of such funds.

96. Defendants' causation of damages was foreseeable in that a failure to properly pay or maintain Plaintiff and the Class's funds would foreseeably deprive Plaintiff and the Class of lawfully earned funds.

97. But for Defendants' actions and omissions, Plaintiff and the Class would have been paid their lawfully owed funds.

98. In addition to being deprived of earned funds, Plaintiff and the Class lost valuable time as Plaintiff and the Class have, in light of non-payment, now worked essentially for free.

99. Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

**(PLEAD IN THE ALTERNATIVE TO COUNT I: BREACH OF CONTRACT)**

100. Plaintiff pleads this count in alternative to Count I. Plaintiff pleads this Cause of Action under Florida law.

101. Plaintiff does not incorporate any of the preceding paragraphs to the extent that such paragraphs allege a valid existing contract. Specifically, Plaintiff alleges this cause of action in the event that this Court does not find that a valid fully executed contract exists. Plaintiff pleads this count in alternative to Count I. If this Honorable Court finds that a valid contract does exist, in full, then this Count should be dismissed by this Honorable Court.

102. Plaintiff conferred a benefit on the Defendants in terms of her hours worked and timeshare sales provided, and tours provided.

103. Defendants knew of this benefit.

104. Defendants accepted and retained these benefits as Defendants profited off of such hours worked and sales made by Plaintiff and the Class.

105. Defendants were enriched because of these benefits as it received income, sales, and other interest through financing.

106. Defendants has not compensated Plaintiff at a fair value for such work done by Plaintiff and the Class

107. Under the circumstances, such a retention of funds by Defendants is inequitable given the unfair value paid by Defendants.

108. As a result of Defendants' actions and omissions herein, Plaintiff and the Class have suffered damages.

**COUNT V**
**QUANTUM MERUIT**
**(PLEAD IN THE ALTERNATIVE TO COUNT I: BREACH OF CONTRACT)**

109. Plaintiff pleads this count in alternative to Count I. Plaintiff pleads this Cause of Action under Florida law.

110. Plaintiff does not incorporate any of the preceding paragraphs to the extent that such paragraphs allege a valid existing contract. Plaintiff pleads this count in alternative to Count I. Specifically, Plaintiff alleges this cause of action in the event that this Court does not find that a valid fully executed contract exists. If this Honorable Court finds that a valid contract does exist, in full, then this Count should be dismissed by this Honorable Court.

111. Plaintiff and the Class conferred a benefit on the Defendants in the form of goods or services. In this matter, Plaintiff provided services in sales, tours, and other additional work provided to Defendants.

112. Defendants agreed to and received the benefit of these services provided by Plaintiff and the Class.

113. A reasonable person receiving the benefits would expect to pay for it under the circumstances.

114. As a result of Defendants' actions and omissions herein, Plaintiff and the Class have suffered damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgement against Defendants in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class and Sub-Class Members;

B. Declaring that Defendants' conduct alleged herein violated the laws referenced herein;

C. Finding in favor of Plaintiff and the Class and Sub-Classes on all counts asserted herein;

D. For injunctive relief as the Court may deem proper; and,

E. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: July 7, 2025

Respectfully submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle (Fed ID No. 6012)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorney for Plaintiff and The Putative Class*