THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JANE HELMS, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 4:24-cv-04154-JD |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM ORDER AND OPINION** |
| Westgate Resorts, Inc.; Westgate Resorts, Ltd, Westgate Myrtle Beach, LLC; Central Florida Investments, Inc; John Doe Corporations 1-25, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Defendants Westgate Resorts, Inc., Westgate Resorts, Ltd, Westgate Myrtle Beach, LLC, and Central Florida Investments, Inc.'s ("Defendants" or "Westgate") Motion to Dismiss Plaintiff's Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 44.) Plaintiff Jane Helms, individually and on behalf of all others similarly situated ("Plaintiff" or "Helms") filed a Response in Opposition (DE 45), and Defendants filed a Reply (DE 46).

This action arises from Plaintiff's former employment as a timeshare sales representative and her allegations that the captioned Defendants failed to pay commissions and related compensation purportedly owed under the parties' employment agreement. In a prior Order, the Court dismissed Plaintiff's First Amended Complaint without prejudice after concluding that Plaintiff failed to plead plausible facts establishing a breach of specific contractual provisions or satisfaction

of the agreement's express conditions precedent. (DE 37.) Plaintiff was granted leave to amend to cure those deficiencies.

For the reasons below, the Court concludes that Plaintiff's Second Amended Complaint suffers from the same fundamental defects identified in the Court's prior Order and fails to state a claim upon which relief can be granted.

## I.     BACKGROUND

### A.     Factual Background

These facts are taken from Helms's Second Amended Class Action Complaint (DE 39) and are taken as true. Defendants employed Helms as a timeshare sales representative at Defendants' Myrtle Beach, South Carolina, property from approximately March 2022 until April 2024. (DE 39 ¶¶ 10, 19.) Plaintiff's compensation was governed by a written Employment Agreement and Commission Schedule, under which sales representatives were paid through commissions subject to specified conditions. (*Id.* ¶¶ 30–31.)

Under the Commission Schedule, commissions were not deemed earned unless certain conditions were satisfied, including that the purchaser made a required down payment and six consecutive, timely monthly payments. (*Id.* ¶¶ 39–40.) The Commission Schedule also established a reserve account, funded by a percentage of commissions, which served as security for potential chargebacks and from which funds would be released only upon satisfaction of the contractual conditions. (*Id.* ¶¶ 37–45.)

Plaintiff alleges that after the termination of her employment, Defendants failed to release funds held in her reserve account and otherwise withheld

commissions she contends were earned or partially earned through her sales efforts. (DE 39 ¶¶ 46–52.) Plaintiff further alleges that Defendants maintained sole discretion over commission payments, improperly charged back commissions, and engaged in a pattern and practice of withholding compensation from similarly situated sales representatives. (*Id.* ¶¶ 31, 47–50.)

Based on these allegations, Plaintiff asserts several state-law claims and proposes a nationwide and South Carolina class of former sales representatives. (*Id.* ¶¶ 57–114.)

## B.     Procedural Background

Plaintiff initiated this action on July 25, 2024, alleging that Defendants failed to pay commissions and related compensation purportedly owed under the parties' employment agreement. (DE 1.) Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 12.) Plaintiff thereafter filed a First Amended Complaint. (DE 15.) Defendants again moved to dismiss. (DE 22.)

By Order dated June 16, 2025, the Court granted Defendants' motion and dismissed the First Amended Complaint without prejudice, concluding that Plaintiff failed to plead plausible facts identifying specific contractual provisions allegedly breached or demonstrating satisfaction of the agreement's express conditions precedent. (DE 37.) The Court granted Plaintiff leave to amend to cure those deficiencies. (*Id.*)

Plaintiff filed her Second Amended Complaint on July 7, 2025 (DE 39) against Defendants, alleging five causes of action:

- Breach of Contract (Count I);

- Conversion on behalf of Plaintiff and the Class (Count II);

- Negligence (Count III);

- Unjust Enrichment (Count IV); and

- Quantum Meruit (Count V).

(*Id.* ¶¶ 76–114.) Plaintiff also seeks certification of a class under Rule 23 of the Federal Rules of Civil Procedure, defined as:

> **Nationwide Class**: All individuals within the United States who worked as salespersons for the Defendants within the applicable statute of limitations who had their commissions, or otherwise performance-based compensations, unlawfully withheld by Defendants.

> **South Carolina Class**: All individuals within South Carolina who worked as salespersons for the Defendants within the applicable statute of limitations who had their commissions, or otherwise performance-based compensations, unlawfully withheld by Defendants.

Defendants again moved to dismiss under Rule 12(b)(6). (DE 44.) Plaintiff filed a Response in Opposition (DE 45), and Defendants filed a Reply (DE 46). The motion is now ripe for disposition.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule

4

12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

## III.    DISCUSSION

Plaintiff's Second Amended Complaint asserts several *new* state-law claims. As with the First Amended Complaint, Plaintiff did not attach the Employment Agreement to the Second Amended Complaint. Plaintiff, however, expressly relies on its existence and terms in asserting her claims. Defendants do not dispute the Agreement's authenticity and have again provided it as an attachment to their motion to dismiss. (*See* DE 44-1; DE 44-2 (collectively, the "Employment Agreement"

or "Agreement").) It is well settled in the Fourth Circuit that courts may consider a document attached to a motion to dismiss where the document is "integral to and explicitly relied on in the complaint" and where no "challenge [to] authenticity" is made, without converting the motion to one for summary judgment. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam). The Court has thus reviewed and considered the employment agreement attached to Defendants' motion in resolving this motion.

The Employment Agreement contains a choice-of-law provision specifying that Florida law governs the construction and interpretation of the contract.[1] (DE 44-1 at 8.) "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004). Thus, the forum-state's rules—here, South Carolina's—for selecting the applicable law control.[2] *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941). "Under South Carolina choice of law rules, 'if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.'"

---

[1]     As noted in the previous order (DE 37 at n 3), the same provision appears to contain what Florida courts refer to as a "mandatory" forum-selection clause. *See Rudman v. Numismatic Guar. Corp. of Am.*, 298 So. 3d 1212, 1214 (Fla. Dist. Ct. App. 2020) ("Mandatory forum selection clauses 'require or unequivocally specify . . . that a particular forum be the exclusive jurisdiction for litigation concerning the contract.'" (quoting another source)). Because Defendants have not raised venue or *forum non conveniens* as an issue, the Court only addresses the choice-of-law portion of the clause.

[2]     The Court is unaware of any precedent in this circuit mandating a different rule for diversity cases subject to the provisions of the Class Action Fairness Act ("CAFA"). It is unlikely, though not entirely certain, that such a rule obtains. *See* Zachary D. Clopton, *Horizontal Choice of Law in Federal Court*, 169 U. Pa. L. Rev. 2193, 2210 & n.108 (2021) (explaining that Congress rejected a replacement rule for *Klaxon* in enacting CAFA).

*Wellin v. Wellin*, 430 F. Supp. 3d 84, 89 (D.S.C. 2019) (quoting *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 578 S.E.2d 329, 336 (2003)). Accordingly, the Court applies Florida law in interpreting the Employment Agreement.

In its June 16, 2025, Order, the Court identified specific pleading deficiencies in Plaintiff's First Amended Complaint and granted leave to amend only to cure those defects. (DE 37.) Despite that guidance, Plaintiff's Second Amended Complaint advances the same imprecise and conclusory allegations previously rejected. Notably, Plaintiff's opposition does not meaningfully address the specific pleading deficiencies identified in the Court's prior Order or Defendants' arguments regarding the failure to allege satisfaction of contractual conditions precedent. Even so, the Court addresses each claim in turn.

## A.    Plaintiff's Claims

### 1.    Breach of Contract (Count I)

To state a claim for breach of contract under Florida law, a plaintiff must allege: (1) the existence of a valid contract; (2) a material breach; and (3) damages resulting from the breach. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Where a contract contains express conditions precedent to payment, the plaintiff must also plead facts demonstrating satisfaction of those conditions or a legally sufficient excuse for nonperformance.[3] (DE 37 at 7–8.)

---

[3]    Nevertheless, Plaintiff acknowledges in her response to the motion to dismiss at issue that the allegations of the Second Amended Complaint regarding her breach of contract claim are "unclear." (DE 45 at 3.)

In its prior Order, the Court identified a specific pleading deficiency—namely, Plaintiff's failure to plead "plausible facts about the breach of those specific provisions of the contract" and failure to address the Agreement's express conditions precedent. (DE 37 at 7–8 (emphasis in original).) Despite that guidance, the Second Amended Complaint suffers from the same imprecision.

First, Plaintiff again fails to identify the specific contractual provisions allegedly breached. Count I alleges, in conclusory terms, that Defendants "refused to pay" "lawfully owed commissions and compensations." (DE 39 ¶ 80.) This generalized formulation does not tie the alleged breach to any particular provision of the Employment Agreement or Commission Schedule and therefore does not permit a plausible inference of breach.

The structure of the pleading itself reinforces that imprecision. Unlike the other counts, Count I does not incorporate the preceding factual allegations and instead relies on a limited set of conclusory assertions. This pleading approach further obscures the basis of the alleged breach and prevents meaningful evaluation of whether any specific contractual obligation was violated.

Second, Plaintiff again fails to plead plausible facts demonstrating satisfaction of the Agreement's express conditions precedent. As explained, the Employment Agreement conditions the earning and payment of commissions on, among other things, the purchaser's payment of a required down payment and six consecutive, timely monthly payments. (DE 37 at 7; *see also* DE 44-2 § I.B.) The Agreement likewise provides that commissions not paid at the time of termination are held in a

reserve account and released only upon satisfaction of those same conditions. (DE 44-2 § III; § VI.)

The Second Amended Complaint contains no nonconclusory factual allegations showing that these conditions were satisfied with respect to any specific sale or transaction. Absent factual allegations tied to identifiable transactions, the Court cannot infer that any commission ever became "earned" under the Agreement. Instead, Plaintiff relies on generalized assertions that commissions were "earned" or "partially earned," terminology that does not appear in—and is inconsistent with—the operative language of the Agreement. Such conclusory allegations are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678.

Finally, to the extent Plaintiff suggests that the Agreement is invalid or illusory, that position is inconsistent with her own allegations. Plaintiff's claimed entitlement to commissions arises solely from the Employment Agreement she simultaneously seeks to challenge. In any event, nothing in the pleadings plausibly alleges that the Agreement lacks mutuality or imposes no obligations on Defendants.

Because Plaintiff has again failed to plead (1) the breach of a specific contractual provision and (2) facts demonstrating satisfaction of the Agreement's express conditions precedent, Count I fails to state a claim and must be dismissed.

### 2.   Conversion on behalf of Plaintiff and the Class (Count II)

Plaintiff asserts a claim for conversion based on Defendants' alleged retention of commissions and reserve funds. (DE 39 ¶¶ 82–89.) Under Florida law, "[c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Mayo v. Allen*, 973 So. 2d 1257, 1258 (Fla. Dist. Ct. App. 2008). To

state a claim for conversion of money, a plaintiff must allege, among other things, specific, identifiable money and an immediate right to possess that money. *See IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013) (requiring money to be identifiable and subject to an obligation to keep intact or deliver). Plaintiff's conversion claim fails for multiple independent reasons.

First, Plaintiff does not plausibly allege a possessory interest in specific, identifiable funds. The Second Amended Complaint refers generally to "commissions," "earnings," and "reserve funds," but does not allege that these funds are segregated or otherwise identifiable as specific monies subject to conversion. (DE 39 ¶¶ 84–85.) Such generalized allegations are insufficient under Florida law, which requires that the money at issue be capable of specific identification. *See IberiaBank*, 984 F. Supp. 2d at 1306.

Second, Plaintiff fails to plausibly allege an immediate right to possession of the funds. As discussed above, the Employment Agreement expressly conditions the earning and payment of commissions—and the release of reserve funds—on the satisfaction of specified conditions precedent, including the purchaser's completion of six consecutive, timely monthly payments. (DE 44-2 § I.B; § III; § VI.) Because Plaintiff has not plausibly alleged that these conditions were satisfied, she has not established a present entitlement to the funds at issue.

Third, Plaintiff's conversion claim is impermissibly duplicative of her breach-of-contract claim. Plaintiff's theory of conversion is entirely premised on Defendants' alleged failure to pay compensation purportedly owed under the Employment

10

Agreement. (DE 39 ¶ 84.) Florida law does not permit a plaintiff to recast a breach-of-contract claim as a tort claim for conversion where the alleged wrongful conduct arises solely from the parties' contractual relationship. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008); *see also Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1286 (S.D. Fla. 2021). Because Plaintiff's alleged entitlement to the funds depends on the terms of the Employment Agreement, she cannot establish the independent property interest required to sustain a conversion claim.

Finally, Plaintiff's opposition does not meaningfully address these deficiencies or Defendants' arguments for dismissal of Count II. For all of these reasons, Plaintiff fails to state a claim for conversion, and Count II must be dismissed.

### 3.    Negligence (Count III)

Plaintiff asserts a negligence claim based on Defendants' alleged failure to maintain and distribute commissions and related compensation properly. (DE 39 ¶¶ 90–99.) Under Florida law, a negligence claim requires the plaintiff to plausibly allege:

> the defendant owed a duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) the defendant failed to conform to that duty; (3) there is [a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury to the claimant; and (4) some actual harm.

*Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (internal quotations omitted). Plaintiff's negligence claim fails because Florida's independent tort doctrine bars it. "It is a fundamental, long-standing common law principle that a

11

plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Roop v. Prime Rate Premium Fin. Corp., Inc.*, 710 F. Supp. 3d 1165, 1175 (M.D. Fla. 2024). Accordingly, a plaintiff must identify a duty that exists independently of the parties' contractual obligations. *See Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1232 (S.D. Fla. 2020).

Here, Plaintiff's negligence claim depends on the parties' contractual relationship. Plaintiff alleges that Defendants owed her a duty to "properly maintain and distribute" her commissions and compensation and that Defendants breached that duty by failing to pay those amounts. (DE 39 ¶¶ 92–94.) But the only source of any such duty is the Employment Agreement itself, which governs when and under what conditions commissions are earned, paid, or held in reserve. Plaintiff identifies no duty arising from statute, common law, or other source independent of the contract.

Because Plaintiff fails to allege the breach of any duty independent of the Employment Agreement, her negligence claim is not distinct from her breach-of-contract claim and cannot proceed under Florida law. *See Roop*, 710 F. Supp. 3d at 1175; *Christie*, 497 F. Supp. 3d at 1232.

Finally, Plaintiff's opposition does not meaningfully respond to Defendants' arguments that the independent tort doctrine bars the negligence claim. Accordingly, Plaintiff fails to state a negligence claim, and Count III must be dismissed.

4.      **Unjust Enrichment (Count IV)**

12

Plaintiff asserts a claim for unjust enrichment in the alternative to her breach-of-contract claim. (DE 39 ¶¶ 100–108.) Under Florida law, a claim for unjust enrichment requires a plaintiff to allege that:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). However, it is well established that a plaintiff may not pursue a claim for unjust enrichment where an express contract exists concerning the same subject matter. *See Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984); *see also Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d at 805.

Here, the existence of an express contract governing Plaintiff's compensation is not in dispute. Plaintiff alleges that she entered into a written Employment Agreement with Defendants, and her claims for unpaid commissions and reserve funds arise directly from that Agreement. (DE 39 ¶¶ 77–78.) This Court has likewise already recognized that the Employment Agreement governs the parties' relationship. (DE 37 at 5.)

Because Plaintiff's unjust enrichment claim is based on the same subject matter as the Employment Agreement—namely, compensation for her sales efforts—it is barred as a matter of law. A plaintiff may not circumvent an express contractual relationship by recasting the same claim under an equitable theory.

Although a plaintiff may plead unjust enrichment in the alternative, such a claim cannot proceed where the parties do not dispute the existence of a valid and

enforceable contract governing the same subject matter. *See Kovtan v. Frederiksen*, 449 So. 2d at 1.

Finally, Plaintiff's opposition does not meaningfully address Defendants' arguments for dismissal of this claim.

Accordingly, Plaintiff fails to state a claim for unjust enrichment, and Count IV must be dismissed.

### 5.    Quantum Meruit (Count V)

Plaintiff asserts a quantum meruit claim in the alternative to her breach-of-contract claim. (DE 39 ¶¶ 109–114.) Under Florida law, quantum meruit is an equitable remedy that permits recovery for the reasonable value of services rendered in the absence of an enforceable contract governing compensation. *See Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999).

However, where an express contract defines the parties' rights and obligations with respect to compensation, a claim for quantum meruit is barred as a matter of law. *See In re Estate of Lonstein*, 433 So. 2d 672, 674 (Fla. Dist. Ct. App. 1983) ("any proof of an express agreement… as to the compensation to be paid for the services rendered [defeats…] an action based upon quantum meruit"); *see also Movie Prop Rentals, LLC v. Kingdom of God Global Church*, 704 F. Supp. 3d 1303, 1314 (S.D. Fla. 2023).

Here, Plaintiff's quantum meruit claim arises from the same alleged conduct underlying her breach-of-contract claim—namely, Defendants' alleged failure to compensate her for sales-related services. (DE 39 ¶¶ 111–113.) But Plaintiff expressly

14

alleges that a written Employment Agreement and Commission Schedule governed her compensation. (*Id.* ¶¶ 30–31, 77–78.) The Agreement defines the terms under which commissions are earned, paid, and retained, and thus governs the precise subject matter of Plaintiff's quantum meruit claim.

Because an express contract governs the parties' compensation arrangement, Plaintiff cannot seek recovery under a theory of quantum meruit for the same services. *See In re Estate of Lonstein*, 433 So. 2d at 674; *Movie Prop Rentals, LLC v. Kingdom of God Global Church*, 704 F. Supp. 3d at 1314.

Although Plaintiff purports to plead quantum meruit in the alternative, such a claim cannot proceed where, as here, the existence of a valid contract governing the same subject matter is not in dispute. Finally, Plaintiff's opposition does not meaningfully address Defendants' arguments for dismissal of this claim.

Accordingly, Plaintiff fails to state a claim for quantum meruit, and Count V must be dismissed.

## B.     Class Certification

Plaintiff seeks to proceed on behalf of a proposed Nationwide Class and a South Carolina Class of former sales representatives whose commissions or other compensation were allegedly withheld. (DE 39 ¶¶ 57–75.) Defendants move to dismiss the class allegations because the proposed classes are impermissible fail-safe classes and otherwise fail to satisfy Rule 23. (DE 44 at 22–24.)

As this Court previously explained, a class definition that depends on the resolution of the merits is improper. (DE 37 at 9–10.) A so-called "fail-safe" class is

one defined in terms of the defendant's alleged liability—such that membership in the class cannot be determined without first deciding the merits of the claims. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 & n.9 (4th Cir. 2014) (recognizing that fail-safe classes are improper because they are defined in terms of liability and thus prevent class membership from being determined before a merits determination).

Also, Rule 23(a)(2) requires that class claims depend upon a common contention capable of generating a common answer that will resolve the litigation "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A class definition that turns on a merits determination is incompatible with this requirement because it prevents the Court from identifying class members without first resolving the very liability questions the class action is meant to adjudicate.

Plaintiff's Second Amended Complaint suffers from the same defect previously identified by the Court. The proposed classes are defined to include individuals "who had their commissions, or otherwise performance-based compensations, unlawfully withheld by Defendants." (DE 39 ¶ 57 (emphasis added).) Whether compensation was "unlawfully withheld" is a merits determination that turns on the very issues this litigation seeks to resolve. As a result, class membership cannot be ascertained without first determining Defendants' liability.

Despite being allowed to amend, Plaintiff has failed to cure this defect. The revised class definitions remain materially indistinguishable from those rejected and therefore are impermissible under Rule 23.

16

Independently, because Plaintiff has failed to state a viable individual claim, she cannot serve as an adequate class representative. Where a named plaintiff fails to state a claim upon which relief can be granted, dismissal of the class allegations is appropriate.

Accordingly, Plaintiff's class allegations are dismissed.

## C.     Leave to Amend

In her Response in Opposition, Plaintiff requests leave to amend if the Court finds the Second Amended Complaint deficient and attaches a proposed Third Amended Complaint, along with the Commission Schedule on which her claims rely. (DE 45; DE 45-1; DE 45-2.) Although Plaintiff has not filed a formal motion for leave to amend, the Court has nevertheless reviewed the proposed pleading in the interest of completeness.

The proposed Third Amended Complaint does not cure the deficiencies previously identified by the Court. Although Plaintiff now references specific provisions of the Commission Schedule—including those governing when commissions are deemed earned and when reserve funds may be released—and alleges that contractual conditions precedent were satisfied, those allegations remain conclusory and unsupported by well-pleaded facts. Plaintiff does not identify any specific transactions, purchasers, or payment histories from which the Court could infer that the conditions governing the earning or release of commissions were satisfied. Instead, Plaintiff relies on generalized assertions that all relevant

17

conditions were met, which are insufficient under *Twombly* and *Iqbal*. See *Iqbal*, 556 U.S. at 678.

Nor does the proposed amendment plausibly establish that Defendants' contractual payment obligations were triggered. The Commission Schedule provides that commissions are not earned unless purchasers make six (6) consecutive, timely monthly payments, and that unpaid commissions following termination are held in a reserve account and released only upon satisfaction of the same conditions. (DE 45-2 § I.B; § III; § VI.) Plaintiff's allegations do not plausibly demonstrate that these conditions were satisfied in a manner that would entitle her to payment under the terms of the Employment Agreement.

Plaintiff's additional proposed claims—including those for breach of the implied covenant of good faith and fair dealing and violation of the South Carolina Payment of Wages Act—are derivative of this same deficient contractual theory and therefore fail for the same reasons. Each claim depends on the premise that commissions or reserve funds were earned and due under the Employment Agreement, a premise that Plaintiff still fails to allege plausibly.

Moreover, this is Plaintiff's third attempt to state a claim. In its prior Order, the Court expressly identified the deficiencies requiring cure, including the failure to plead specific contractual provisions and satisfaction of conditions precedent. (DE 37 at 7–8.) Despite that guidance, Plaintiff has not remedied those defects.

Under these circumstances, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525

F.3d 370, 376 (4th Cir. 2008). Accordingly, Plaintiff's request for leave to amend is DENIED.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (DE 44) is GRANTED. Plaintiff's Second Amended Complaint (DE 39) is DISMISSED WITH PREJUDICE. Plaintiff's request for leave to amend is DENIED. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 19, 2026

19